# Mitchell Dinnerstein
Attorney at Law

20 Vesey Street - Suite 400
New York, New York 10007
212.925.0793 (office)
212.964.2926 (fax)
917.763.2897 (cell)
md@dinnersteinlaw.com

**Filed by ECF**



April 5, 2015

United States District Court
Southern District of New York
Hon. Judge George Daniels
500 Pearl Street
New York, New York 10007

RE: <u>USA v. Ralph Nolan</u>
    14-CR-555(GBD)

Dear Judge Daniels:

      I write to Your Honor on behalf of my client Ralph Nolan in support of his motion to preclude any in-court identification testimony from Government witnesses Lorraine Scroggins, Desiree Scroggins, Christopher Martinez and Sandra Martinez. I make this request because it is apparent that Detective Ellis Deloran of the NYPD employed impermissibly suggestive identification procedures and techniques which rendered all out-of-court identifications of Mr. Nolan unreliable, thereby further tainting all prospective in-court identifications by these witnesses.

## Background

      This Court has scheduled a trial in this matter for April 6, 2015. On April 1, 2015, the Government provided the defense with 3500 material. Initially, the Government provided no 3500 material for Detective Ellis Deloren who was the lead detective in this case from the outset, December 16, 2013. Ralph Nolan is charged with participating in a robbery of an apartment at 1428 Webster Avenue, Bronx, New York. The defense is that Ralph Nolan was not present when the crime occurred. Therefore the accuracy of the identifications is the key issue in the case. I learned after receiving the 3500 material that the Government does not plan to call Detective Deloren as a witness for its case. This, despite the fact, that Deloren and his partner, Tessitore, were the lead officers prior to the involvement of the federal authorities on January 30, 2014.

      The Government provided the defense with Rule 16 discovery that three witnesses, their names at that time, unknown to the defense, had identified Ralph Nolan in three separate photo

1

array identification procedures occurring on Jan 28, 2014, February 10, 2014 and April 30, 2014. On or about April 1, an additional set of 22 arrest photos was produced to the defense, which included an arrest photo of Ralph Nolan, complete with his name and other identifying information. Written on Mr. Nolan's arrest photo, there is an "X" and the date "1/27/14 10:40AM." See, Exhibit A.

It has been acknowledged by the Government that at least two of the witnesses, viewed Facebook pictures of Ralph Nolan to possibly reinforce their original tentative identifications. This conduct was promoted and encouraged by Detective Deloren.

I have learned, for instance that Desiree Scroggins said in an April 3, 2015 interview with the Government that she was only approximately 70% sure when viewing the 22 photos on January 27, 2014. See, Exhibit B. It should be noted that Detective Deloren after showing Desiree Scroggins those photos encouraged her to view Facebook photos to confirm her identification based on 3500 material received on April 3, 2015. There, the government produced an email summarizing an April 2, 2015 conversation between government prosecutors and Detective Deloren. See, Exhibit C. According to that document, Detective Deloren confirms that he made no attempt to conceal Mr. Nolan's name when he showed Lorraine and Desiree Scroggins Mr. Nolan's arrest photo—"[t]he paper was not folded when she signed it so she could have seen the name." Id. . He further directed Ms. Scroggins to "look at his friends and see if you recognize the other perpetrator." Id.

How Facebook viewing was used in these identification procedures has created the unmistakable impression that impermissible suggestive identification procedures have been used in this case by Detective Deloren and his partner Detective Tessitore before the Government agents got involved in this case. The taint had already occurred. The Government has further provided the defense with information about Detective Deloren's past conduct.

For example, the Government has recently provided the defense with this information

On March 31, 2015, the government sent the following letter stating,

> Witness 2 now known, through 3500 material, to be Desiree Scroggins identified a photograph of one of the robbers on January 27, 2014, Witness-2's mother Lorraine Scroggins, who was also present during the robbery, then identified the photograph and was able to see the robber's name, Ralph Nolan. Desiree and Lorraine Scroggins then found Ralph Nolan on Facebook. Desiree Scroggins showed the Facebook page for Nolan to her boyfriend Christopher Martinez, who was also present during the robbery, and her boyfriend Mr. Martinez indicated that the person on the Facebook page was "white boy" from the boyfriend's old neighborhood and that the boyfriend did not think "white boy" would have robbed them. At a later date February 10, 2014, Witness-2's boyfriend identified Nolan in a photo array.[1]

See, Exhibit D.

---

[1] Christopher Martinez did not identify Nolan after the incident when he was interviewed by the assigned detectives.

2

On April 1, 2015, the government further produced additional 3500 material to the defense. Among other things, the defense learned for the first time that

1. Detective Ellis Deloren showed Desiree and Lorraine Scroggins the photo set which included Ralph Nolan's name, on January 27, 2014.
2. After learning Ralph Nolan's name on January 27, 2014, Desiree and Lorraine Scroggins viewed Mr. Nolan's Facebook page and then showed the page to Christopher Martinez.
3. Christopher Martinez subsequently spoke to his mother, Sandra Martinez, and the two discussed the Facebook page and knowing Mr. Nolan as "white boy" from the old neighborhood.
4. The only witness who did not make an identification of Mr. Nolan, Deyanira Beriguete, was never shown Mr. Nolan's Facebook page.
5. All four identification witnesses, and Ms. Beriguete, described both robbers as Hispanic males.[2]
6. Detective Ellis Deloren, the lead detective on the instant case, was not being called by the government at trial.

On April 2, 2015, at 11:43 p.m., the government sent a letter to the defense enclosing two transcripts where Detective Deloren was called as a government witness and found not to be credible, the first from U.S. v. Antione Chambers, 13 Cr. 345 (LGS) and the second from U.S. v. David Cooper, 05 Cr. 1139 (DAB).

In Chambers, Judge Schofield found that Detective Deloren's testimony that he told the government and FBI about showing an eyewitness a single photo from the internet was not credible. The court then found that based on the "totality of the circumstances ... the photo identifications and surrounding circumstances were unduly suggestive and conducive to misidentification." See, Exhibit E at 707.

In Cooper, Judge Batts, after conducting a pre-trial suppression hearing, found Detective Deloren's testimony not credible and suppressed a gun. At the suppression hearing, Judge Batts stated:

> It is not clear to the Court that Officer Deloren, from his own testimony, was in a position to observe what he said he observed on Mr. Cooper; that is, if he's looking into the car from the left with only a flashlight, and Mr. Cooper is sitting up hunched over as Officer Deloren said, and the seat back is back, it is not clear to me how Officer Deloren could see the T-shirt only on the right side was pulled over the lap belt of the seat belt.

See, Exhibit F at 101.

---

[2] Nolan is a White Irish individual.

3

Judge Batts also credited the defendant's version of events over Detective Deloren's:

> It is not credible to the Court that Mr. Cooper would just voluntarily say as he's getting out of the car to be searched anyway, I have a gun, even if he did not say that until after he was being patted down, believing that he was in custody.

Id. at 103.

After hearing argument by the government and defense counsel, Judge Batts orally granted the defendant's motion to suppress.

As discussed above, on April 3, 2015, the government produced an email summarizing an April 2, 2015 conversation between government prosecutors and Detective Deloren. See, Exhibit C. Other than acknowledging that Detective Deloren confirmed that he made no attempt to conceal Mr. Nolan's name from Lorraine and Desiree Scroggins, and, in fact, encouraged them to look on Facebook, which is discussed above, Deloren also told the Government that he "have not documented every discussion". In fact, when one reviews the paltry 3500 material of the lead detective in this case assigned to this case on the date it happened December 16, 2013, Deloren documented basically nothing. Deloren told the Government that he further directed Ms. Scroggins to "look at his friends and see if you recognize the other perpetrator," Id. obviously improperly reinforcing herr identification.

Finally, as to the January 28, 2014, the identification by Sandra Martinez, Ms. Martinez has presently recanted that identification and cannot make a present identification  Referring to her previous January 28 identification, she now says that she was "pretty sure" then.  (See, Exhibit G)  It is unknown whether she also viewed Facebook photos of Mr. Nolan.

**Argument**

Due Process requires that in order to protect a defendant's fundamental right to a fair trial, identification procedures employed by law enforcement must not be so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See, Simmons v. United States, 390 U.S. 377, 384 (1968). It has long been recognized that eyewitness identifications may be made unreliable by a variety of factors, only some of which are under the control of law enforcement. Id. See also, Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). The Court must also "examine the procedures employed in light of the particular facts of the case and the totality of the surrounding circumstances." U.S. v. Thai, 29 F.3d 785, 808 (2d Cir. 1994).

The sequence of events that begun on January 27, 2014 when Detective Deloren showed Desiree and Lorraine Scroggins an arrest photo of Mr. Nolan, which included his name, and then facilitated and encouraged looking up Mr. Nolan on Facebook—going so far as to suggest further investigation techniques to her—impermissibly tainted all three photo array identifications. Each of the identifying witnesses most likely had seen additional photos of Mr. Nolan from his Facebook page, which included references to marijuana and possibly a photo of

4

him holding what appears to be a gun, prior to picking him out in a photo array, where each time Mr. Nolan was positioned as #3.[3]

Therefore, the government should be precluded from eliciting an in-court identification from Lorrraine Scroggins, Desiree Scroggins, Christopher Martinez and Sandra Martinez. At the very least, the danger of misidentification in this case requires an evidentiary hearing.

Thank you for your attention to this matter,

Very truly yours,

Mitchell Dinnerstein
Attorney for Ralph Nolan

---

[3] It is also noteworthy that Mr. Nolan was always in the same location, in the photo array, #3, so that a subsequent witness may have learned of the photo location of the target.