JUDGE DANIELS

UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

Ralph Nolan   (71309-054)

    Petitioner/Defendant.

    -against-

Civil No.

United States of America,

    Respondent.

-------------------------------------------------------------



# MEMORANDUM OF LAW IN SUPPORT OF A MOTION PURSUANT TO 28 U.S.C. §2255 TO VACATE, SET ASIDE OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY

October 6, 2016

PREET BHARARA
United States Attorney, SDNY

Susan J. Walsh, Esq.
Vladeck Raskin & Clark, PC.
Attorney for Petitioner
565 Fifth Avenue, 9th Floor
New York, New York 10017



782225 v1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

    A. The Defendant's Arrest ............................................................................................ 2

    B. Pre-trial Litigation .................................................................................................... 4

    C. Government Demands Alibi Notice ....................................................................... 10

THE TRIAL .......................................................................................................................... 11

    A. The Defense Case ................................................................................................... 20

    B. The Alibi ................................................................................................................. 22

    C. The Charge ............................................................................................................. 23

    D. Summations ............................................................................................................ 23

    E. The Lack of An Expert Witness ............................................................................. 25

    F. Post-Trial Motions .................................................................................................. 26

    G. Eyewitness Identification Expert ........................................................................... 27

ARGUMENT ........................................................................................................................ 29

   I. Petitioner Was Denied His Right to the Effective Assistance of Counsel ................ 29

    A. The Failure to Consult an Expert in Eye-witness Identification Deprived Defendant of his Sixth Amendment Right to the Effective Assistance of Counsel ................................................................................................................... 31

    B. The Failure to Consult or Call an Expert in Eye-witness Identification Was Prejudicial ............................................................................................................... 37

        1. Weapon Focus, Multiple Perpetrators and Stress (Penrod Rpt. at 32 - 41) .......... 39

        2. Cross-Race Identification and Obscured Views (Penrod Rpt. at 41-47) .............. 43

        3. Prior Exposure, Mis-recognition, Unconscious Transference and Multiple Suspect Arrays (Penrod Rpt. at 49-56) ................................................................. 45

| | 4. | Suggestivity and (Non)-Blind Presentation (Penrod Rpt. at 57-60) | 47 |
| | 5. | Retention Interval and Non-Identification (Penrod Rpt. at 37-39; 47-49) | 50 |
| | 6. | Witness Confidence and Confidence Malleability (Penrod Rpt. at 60 - 68) | 51 |
| | 7. | Cumulative Impact of Factors (Penrod Rpt. at 68-69) | 53 |
| C. | | Dr. Penrod's Testimony Is Relevant and Admissible Under Fed. Rule Evid. 702 and *Daubert* | 54 |
| D. | | The Jury Charge and Cross-Examination Did Not Cure the Prejudice | 59 |
| E. | | Counsel Was Ineffective When He Withdrew the Motion to Suppress Identification Evidence | 64 |
| F. | | Petitioner Was Denied His Right to Effective Assistance of Counsel When His Attorney Permitted the Introduction of Highly Prejudicial Prior Crimes Evidence And Failed to Investigate and Mitigate Such Evidence | 74 |
| | 1. | The Failure to Preclude the Facebook Photo of Defendant with a "Hand Gun" | 76 |
| | | a. Defense Counsel Failed to Mitigate Facebook "Gun" Evidence | 80 |
| | 2. | The Failure to Preclude Evidence of Remote Juvenile Attempted Robbery | 81 |
| | 3. | The Failure to Preclude Evidence of Prior Arrests and Convictions | 83 |
| G. | | Counsel's Failure to File Alibi Notice Deprived Defendant of Effective Assistance | 84 |
| II. | | The Cumulative Effect of Multiple Errors Deprived Defendant of His Right to the Effective Assistance of Counsel | 86 |
| CONCLUSION | | | 88 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell v. Miller*,
    500 F.3d 149 (2d Cir. 2007)..................................................................................36, 59

*Cage v. City of Chicago*,
    979 F. Supp. 2d 787 (N.D. Ill. 2013) ............................................................................58

*Claudio v. Scully*,
    982 F.2d 798 (2d Cir. 1992), *cert denied*, 508 U.S. 912(1993)..................29, 32, 76, 88

*Cox v. Donnelly*,
    387 F.3d 193 (2d Cir. 2004)......................................................................................29, 69

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)........................................................................................54, 55, 58

*Dugas v. Coplan*,
    428 F.3d 317 (1st Cir. 2005).............................................................................................35

*Eze v. Senkowski*,
    321 F.3d 110 (2d Cir. 2003)..................................................................................34, 36, 87

*Ferensic v. Birkett*,
    501 F.3d 469 (6th Cir. 2007) ..........................................................................................37

*Foster v. United States*,
    394 U.S. 440 (1996)........................................................................................................71

*Gersten v. Senkowski*,
    426 F.3d 588 (2d Cir. 2005)......................................................................................35, 36

*Greiner v. Wells*,
    417 F. 3d 305 (2d Cir. 2005)..........................................................................................86

*Henry v. Poole*,
    409 F.3d 48 (2d Cir. 2005)..............................................................................................30

*Huddleston v. United States*,
    485 U.S. 681 (1988)..........................................................................................77, 79, 83

*Jarret v Headley*
    802 F.2d 34 (2d Cir. 1986)........................................................................................65, 67

*Kampshoff v. Smith*,
 698 F.2d 581 (2d Cir. 1982) ............................................................................................... 32, 38

*Kennaugh v. Miller*,
 289 F.3d 46-48 (2d Cir. 2002) ................................................................................................. 71

*Kimmelman v. Morrison*,
 477 U.S. 365 (1986) ........................................................................................... 29, 31, 66

*Lindstadt v. Keane*,
 239 F.3d 191 (2d Cir. 2001) .................................................................................................. 35, 87

*Manson v. Brathwaite*,
 432 U.S. 98 (1977) ................................................................................................... 67, 71

*Massillon v. Conway*,
 574 F. Supp.2d 381 (S.D.N.Y. 2008) ................................................................................. *passim*

*Mayo v. Henderson*,
 13 F.3d 528 (2d Cir. 1994) ...................................................................................................... 30

*McMann v. Richardson*,
 397 U.S. 759 (1970) ........................................................................................................ 29, 86

*Miller v. Anderson*,
 255 F.3d 455 (7th Cir. 2001) ................................................................................................... 35

*Moore v. Keller*,
 917 F.Supp. 2d 471 (E.D.N.C. 2012) *rev. by Moore v. Hardee*, 723 F.3d 488
 (4th Cir. 2013) ........................................................................................................................... 37

*Morrison v. Kimmelman*,
 752 F.2d 918 (3d Cir. 1985) *aff'd on other grounds* 477 U.S. 365 (1986) ............................ 71

*Newsome v. McCabe*,
 319 F.3d 301 (7th Cir. 2003) ................................................................................................... 33

*Old Chief v. United States*,
 519 U.S. 172 (1997) ................................................................................................................ 79

*Pavel v. Hollins*,
 261 F.3d 210 (2d Cir. 2001) ........................................................................................ 36, 76, 87

*People v. Le Grand*,
 8 N.Y.3d 449 (2007) ................................................................................................................ 34

*Perry v. New Hampshire*,
 132 S.Ct. 716 (2012) ........................................................................................................ *passim*

*Pham v. United States*,
  317 F.3d 178 (2d Cir. 2003)..................................................................................30, 32, 54

*Raheem v. Kelly*,
  257 F.3d 122 (2d Cir. 2001)..................................................................52, 67, 68, 70

*Rock v. Conway*,
  470 Fed. Appx. 15 (2d Cir. 2012).........................................................................72

*Solomon v. Smith*
  645 F.2d 1179 (2d Cir. 1981)...............................................................................49, 70

*State v. Henderson*,
  208 N.J. 208 (2011) ...............................................................................................33

*Strickland v. Washington*,
  466 U.S. 668 (1984).............................................................................................. *passim*

*Sturgeon v. Quarterman*,
  615 F.Supp. 2d 546 (S.D. Tex. 2009) ...................................................................37

*Thomas v. Varner*,
  428 F.3d 491 (3d Cir. 2005).................................................................................30, 69, 86

*United States v. Alexander*,
  816 F.2d 164 (5th Cir. 1987) ................................................................................57

*United States v. Benford*
  479 Fed. Appx. 186 (11th Cir. 2011)....................................................................78

*United States v. Brien*,
  59 F.3d 274 (1st Cir. 1995) *cert denied* 516 U.S. 953 (1995) ...............................56

*United States v. Brown*,
  623 F.3d 104 (2d Cir. 2010).................................................................................29

*United States v. Brownlee*,
  454 F.3d 131 (3rd Cir. 2006) ................................................................................51, 58

*United States v Concepcion*,
  983 F.2d 369 (2d Cir. 1992).................................................................................64

*United States v. Cronic*,
  466 U.S. 648 (1984)..............................................................................................29

*United States v. Curley*,
  639 F.3d 50 (2d Cir. 2011)...................................................................................79

*United States v. DiPalermo*,
606 F.2d 17 (2d Cir. 1979) ........................................................................... 49, 50, 71

*United States v. Dominguez Benitez*,
542 U.S. 74 ................................................................................................. 30

*United States v. Feliciano*,
No. CR08-0932-01PHXDGC, 2009 WL 3748588 (D. Ariz. Nov. 6, 2009) ............. 33, 58

*United States v. Ford*,
683 F.3d 761 (7th Cir. 2012) ......................................................................... 84, 85

*United States v. Gibbs*,
797 F.3d 416 (6th Cir. 2015) ......................................................................... 77

*United States v. Gilan*,
967 F.2d 776 (2d Cir. 1992) .......................................................................... 78

*United States v. Glisson and Chambers*,
16-163 .................................................................................................. *passim*

*United States v. Graves*,
465 F. Supp. 2d 450 (E.D. Pa. 2006) .............................................................. 58

*United States v. Harris*,
298 F. Supp. 2d 320 (EDNY 2004) ............................................................... 43, 62, 63

*United States v. Hsu*,
669 F.3d 112 (2d Cir. 2012) .......................................................................... 79

*United States v. Jordan*,
924 F. Supp. 443 (W.D.N.Y. 1996) ................................................................ 55, 56

*United States v. Kaiser*,
609 F.3d 556 (2d Cir. 2010) .......................................................................... 77

*United States v. Kwong*,
69 F.3d 663 (2d Cir. 1995) ............................................................................ 72

*United States v. Leonardi*,
623 F.2d 746 ............................................................................................... 49, 70

*United States v. Lester*,
254 F. Supp. 2d 602 (E.D. Va. 2003) .............................................................. 58

*United States v. Luis*,
835 F.2d 37 (2d Cir. 1987) ............................................................................ 63

*United States v. Lumpkin*,
  192 F.3d 280 (2d Cir. 1999)..................................................................................51, 52

*United States v. Mazzuca*,
  570 F.3d 490 (2d Cir. 2009)..........................................................................................30

*United States v. McCallum*,
  584 F.3d 471 (2d Cir. 2009)....................................................................74, 79, 81, 84

*United States v. Meislin*,
  108 F.Supp.3d 38 (N.D.N.Y. 2015)..............................................................................79

*United States v. Mitchell*,
  No. CIV.A. 05-CV-823, 2007 WL 1521212 (E.D. Pa. May 21, 2007) ...............34, 60

*United States v. Mohamed*,
  2016 U.S. Dist. LEXIS 7394 (EDNY 2016)................................................................38

*United States v. Moore*,
  786 F.2d 1308 (5th Cir. 1986) ......................................................................................57

*United States v. Moskowitz*
  581 F.2d 14 (2d Cir.) *cert denied* 439 U.S. 871 (1978)........................................49, 70

*United States v. Owens*,
  682 F.3d 1358 (11th Cir. 2012) ....................................................................................54

*United States v Paulino*,
  445 F.3d 211 (2d Cir. 2006)..........................................................................................78

*United States v. Pearson*,
  159 F.3d 480 (10th Cir. 1998) ......................................................................................84

*United States v. Quinones*,
  511 F.3d 289 (2d Cir. 2007)..........................................................................................77

*United States v. Rincon*,
  28 F.3d 921 (9th Cir.) *cert denied* 516 U.S. 953 (1995)............................................57

*United States v. Rutkoske*,
  506 F.3d 170 (2d Cir. 2007)..........................................................................................78

*United States v. Saldana*,
  No. 05 CR 1335 (LMM), 2006 WL 1376933 (S.D.N.Y. May 17, 2006) ..................67

*United States v. Serna*,
  799 F.2d 842 (2d Cir. 1986)..........................................................................................56

*United States v. Smith*,
   621 F. Supp. 2d 1207 (M.D. Ala. 2009) ............................................................................. 33

*United States v. Smith*,
   736 F.2d 1103 (6th Cir. 1984) ............................................................................................ 57

*United States v. Smithers*,
   212 F.3d 306 (6th Cir. 2000) ................................................................................ 33, 38, 54, 57

*United States v. Stevens*,
   935 F.2d 1380 (3rd Cir. 1991) ........................................................................................ 51, 58

*United States v. Sulaiman Abu Ghayth*,
   990 F.Supp.2d 427 (S.D.N.Y 2014) ................................................................................... 72

*United States v. Thai*,
   29 F.3d 785 (2d Cir. 1994) .................................................................................... 49, 70, 71

*United States v. Torres-Flores*,
   827 F.2d 1031 (5th Cir. 1987) ............................................................................................ 81

*United States v. Veal*,
   1999 U.S. App. Lexis 13324 (2d Cir. 1999) ...................................................................... 63

*United States v. Wade*,
   388 U.S. 218 (1967) ............................................................................... 5, 31, 32, 33

*Watkins v. Sowders*,
   449 U.S. 341 (1981) ........................................................................................................... 67

*Wiggins v. Smith*,
   539 U.S. 510 (2003) ........................................................................................................... 34

*Young v. Conway*,
   698 F.3d 69 (2d Cir. 2012) ................................................................................ 33, 38, 51, 57

**Statutes**

18 U.S.C. § 924(c)(1)(A)(ii) ...................................................................................................... 2, 4

18 U.S.C. § 1951 ......................................................................................................................... 2, 4

Criminal Justice Act ....................................................................................................................... 4

Fed. R. Crim P. 29(c) .................................................................................................................... 26

Fed. R. Evid. 106 ....................................................................................................................... 2, 4

Fed. R. Evid. 403 ..................................................................................................................... 79, 83

Fed. R. Evid. 404(b) ............................................................................................. 2, 4, 77

Fed. R. Evid. 615 ........................................................................................................ 69

Fed. R. Evid. 104 ........................................................................................................ 83

Fed. R. Evid. 702 ..................................................................................... 54, 55, 57, 58

Fed. R. Crim P. 12.1(a) ............................................................................................. 84

Highly Prejudicial Prior Crimes Evidence And Failed to Investigate and Mitigate
   Such Evidence ........................................................................................................ 74

Innoncence Project, Eyewitness Misidentification
   http://www.innocenceproject.org/causes/eyewitness-misidentification/ (last
   visited 9/30/16) ...................................................................................................... 34

U.S. Const. amend. VI ......................................................................................... 29, 86

## PRELIMINARY STATEMENT

Ralph Nolan's conviction is tainted by pervasive ineffective assistance of counsel in violation of the Sixth Amendment, which is manifest on and outside the record of the proceedings, and which permeated the entire span of the representation. The only direct evidence that connected Ralph Nolan to the crime for which he was convicted was the immunized testimony of four related witnesses whose tainted pre-trial identifications were never properly challenged either pre-trial or during the trial. Trial counsel recognized his monumental blunder too late; long after the jury returned a verdict.[1] Counsel acknowledged his failure to consult or call an expert witness, but he also failed at every stage of his representation, including inadequate investigation and motion practice, failure to provide timely and proper alibi notice, inept cross-examination, failure to object to obviously prejudicial evidence, and failure to seek appropriate jury instructions.

No physical evidence: no fingerprint evidence, no DNA, no location data, no photographic evidence, no inculpatory statement, not even any cooperator testimony tied Ralph Nolan to the December 16, 2013 Hobbs Act robbery of Lorraine and Desiree Scroggins and Christopher and Sandra Martinez in the apartment from which they sold, smoked and stored marijuana. Despite good faith grounds to challenge questionable investigative tactics of the lead Detective Deloren, which was corroborated by the testimony of an independent witness, defense counsel failed to move pre-trial to challenge suggestive pre-trial identifications and both permitted and facilitated the introduction of highly prejudicial, inflammatory evidence without a hint of objection and without any reasonable strategy. The results were a plethora of error both

---

[1] *See* Walsh Declaration Exhibit 1, ("Walsh, Ex.") (Letter from trial counsel Mitchell Dinnerstein, October 9, 2015). "Walsh, Ex." refers to the Appendix of Exhibits filed in support of the Motion.

on and *dehors* the record that permeated the trial and deprived Ralph Nolan of his right to a fair trial and effective assistance of counsel.

## STATEMENT OF FACTS

A. The Defendant's Arrest

On July 28, 2014, Ralph Nolan was arrested and charged in a three count complaint with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, attempted Hobbs Act robbery, in violation of 18 U.S.C. §1951 and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(ii). The complaint, sworn to the day of his arrest by a federal agent, suggested that "*three* of the individuals who were present in the apartment during the robbery...independently reviewed photo arrays, and each identified a picture of Ralph Nolan...." (Walsh, Ex. 2 (Complaint at ¶ 8 *emphasis supplied*)) No other police arranged identification proceedings are mentioned in the complaint.

Ralph Nolan waived his rights and gave an approximately 50 minute exculpatory statement on video-tape in an up-state police station which included questions about a prior robbery conviction some ten years earlier when he was a juvenile aged 15 and a confrontation with a Facebook photograph of him posing with what looks like a hand gun. (Gov't Trial Exhibits ("GX") 402 and 501; Walsh, Ex. 3 (Facebook Photo); Walsh, Ex. 4, (Transcript of April 1, 2015 at 3). Both were admitted at trial without defense objection or request for limiting instruction by defense counsel. (Tr 326 -328)[2], (GX 402, 501)[3]. The photo was again elicited by

---

[2] "Tr" refers to page citations from the trial transcript and "GX) to Government Exhibits at trial. The trial transcript is available with Petitioner's counsel upon request).

[3] Inexplicably, at the final pre-trial conference on April 1, 2015, defense counsel conceded that the photo and discussion about prior drug use would be admissible under the Fed. R. Evid. 106 (Rule of Completeness) but suggested that neither should "get in" as Fed. R. Evid. 404(b) material. (Walsh, Ex. 4. at p 10). Yet counsel sought no limiting instruction nor made any attempt to temper the jury's misimpression that the photo of the "gun" is direct evidence or proof of defendant's "comfort" and "ease" with guns or his opportunity and intent to possess a gun, as

defense counsel during cross examination of the agent. (Tr 386 "Its clear [the detective] was on Facebook because that is how we were able to get the picture of the defendant holding the gun. He had a Facebook page.") Moreover, no corroboration of the defendant's statement was provided the Court, much less the jury, that the "gun" was a toy one or that the prior "robbery" was in essence what the defendant stated; teenage boys fighting and taking the pocket change of a couple other boys under the threat of fisticuffs – hardly an armed home invasion. (Walsh Ex. 5) (Family Court Pleading and Disposition). Because defense counsel never interviewed a key witness, the owner of the bb gun who took the photo as a stupid, boyish prank, he was unable to alert the Court to its virtually nonexistent probative value and its obvious prejudice when the Government moved for its introduction.

Similarly he could not and did not present rebuttal evidence after it was admitted and did not seek any limiting instruction. (Tr 326-328) (GX 501). Defense counsel raised no objection whatsoever during the trial of his client for a gun point home invasion when a photograph of his client was displayed to the jury depicting him posing with what looked like a handgun. (Tr 326-328, (GX 501); (COURT: Any Objection? DEFENSE COUNSEL: No.) Had anyone asked, the owner of the bb gun was ready willing and able to describe the toy gun, where he had purchased it and where and how the photograph on Facebook of the defendant posing with it in upstate New York came to pass. (Walsh, Ex. 6, Sworn Statement Joseph Nolan). Ralph Nolan's cousin, Joseph Nolan, the owner, was never approached by the defense (or law enforcement) before trial to truthfully corroborate his cousin Ralph Nolan's post-arrest statement that the photo on his Facebook was meant to be a joke and, that it was not a real gun. (*Id.*, Tr 401 - 402).

---

charged in the indictment, nor did counsel seek to redact that portion of the video-taped statement. (Walsh, Ex. 4 and Ex. 7(Gov't Motion *in Limine* at pp 5-7))

The Court was never apprised of this information in ruling on the *in limine* motion by the Government to admit the photo. (Walsh, Ex. 4). Of course, the jury never learned it was in fact a toy bb gun, as the defendant described it in his testimony, nor were they given any limiting instruction on how to weigh the evidence, because the defense counsel never requested it. The Government's argument that the Defendant was a liar and it was "not a bb gun" on summation was left unrebutted. (Tr 787). Similarly, the jury never learned that the defendant's "prior robbery" was hardly a gun-point home invasion like the charge for which he stood trial, but in fact was a juvenile conviction from close to ten years ago (which in fact corroborated the defendant's video-statement). (Walsh, Ex. 5) No contemporaneous limiting instruction, or an instruction at the close of the evidence, much less a request to redact this potent propensity evidence was requested by defense counsel at any time. [4]

On August 21, 2014, a grand jury returned a three count indictment against Ralph Nolan charging him with conspiracy to commit a Hobbs Act robbery, 18 U.S.C. §1951 (Count One); attempted Hobbs Act robbery, 18 U.S.C. §1951 (Count Two); and brandishing a firearm during and in relation to the attempted robbery charged in Count Two, 18 U.S.C. §924(c)(1)(A)(ii), (Count Three). Trail counsel was assigned pursuant to the Criminal Justice Act on November 14, 2014. Trial commenced on April 6, 2015.

B. Pre-trial Litigation

Four of the five victims of the robbery testified at trial that they had previously identified Ralph Nolan in police arranged pre-trial identification procedures as one of two robbers who

---

[4] The Government notified defense counsel of the FRE 404(b) evidence it might seek to introduce at trial well in advance of trial and moved in writing *in limine* pre-trial. (Walsh, Ex 8 (404(b) Notice)). Defense counsel did not respond in writing to the *in limine* motions on either the photo with the gun or the alleged drug use, except to urge that the entire video-taped statement be admitted under FRE 106, rather than the segment the Government originally proposed to admit.

entered their apartment on December 16, 2013. All four identifying witnesses were immunized and the one adult victim who did not testify under a grant of immunity, a home health attendant, Deyanira Beriguete, did not identify Ralph Nolan, either pre-trial, (Walsh, Ex. 9), or at the trial. (Tr 193, 201). Of the five victims, she was also the only witness who was not shown Ralph Nolan's Face book photographs at all or related by blood or intimate partnership to the other witnesses. [5] (Tr 363).

The Government provided in discovery notice of the identification proceedings and the video taped statement, and separately noticed prior bad acts, (Walsh, Ex. 7 & 8). The defense knew that the identification proceeding whereby Lorraine Scroggins, identified Ralph Nolan as a perpetrator, was unconstitutionally suggestive because she was shown Ralph Nolan's Face book photograph before she or anyone else, made an identification of him. (Walsh Ex. 10) (Robert Jackson Interview)[6]. Moreover, by the April 1, 2015 disclosure of the first photographic identification procedure, the suggestivity of the police conduct was more than apparent. (Walsh, Ex. 11 (Defense Motion to Preclude Id). Nevertheless, defense counsel did not move for a *Wade* hearing to challenge the evidence, and then after making an eleventh hour motion to preclude "in-court identifications" appears to have fundamentally misapprehended the law and subsequently withdrew the motion. (Walsh Ex. 11, Tr 50 ).

On February 3, 2015, two months before trial, trial counsel learned that the lead NYPD Detective Deloren had displayed the Facebook pages of Ralph Nolan to eyewitnesses to the robbery. (Walsh, Ex. 10). Lorraine Scroggins' son, Robert Jackson, told a defense investigator

---

[5] Lorraine Scroggins was the lease holder and her daughter Desiree Scroggins lived with her as did Desiree's boyfriend, the father of her child, Christopher Martinez and apparently at times, his mother Sandra Martinez stayed at the Scroggins' apartment.

[6] The Robert Jackson interview was recorded by a defense investigator and the professionally audio-enhanced. The recording is available with petitioner's counsel.

that he was present for his mother's identification proceeding from her bed in the apartment and that when she first viewed the photographs, she, (like her daughter before her, (Tr 431-432, Walsh, Ex.12) ), said she was unsure but that Ralph Nolan's photo "could look like" one of the robbers. Jackson stated that the detective then indicated he wanted to show Lorraine Scroggins "something else." (Walsh, Ex. 10) The Detective proceeded to show her Ralph Nolan's Facebook pages of electronic photographs, at which point she identified him as a robber. (*Id.*) The Detective then pointed out which of his arrest photographs was the same person on Facebook. Lorraine Scroggins stated that the Detective typed in the name.[7] No other suspect's Facebook page was displayed to Lorraine Scroggins or any other witness. Apparently, the Detective had Lorraine mark the arrest photograph with an "X" as she was unable to write due to her condition. (Tr 434 (GX 200) (Walsh, Ex. 13).

At trial the Detective explained this procedure was an <u>all-suspect</u> group of 22 mug shot photos gathered using a mutually common address shared with a suspected co-conspirator - a blood relative of two of the victims, Shaun Odiot. (Tr 426 - 430 ). The discovery, which had been in defense counsel's possession since March 3, 2015, indicated only that Desiree Scroggins stated that Ralph Nolan "looks a lot like" one of the perpetrators but "wasn't positive." (Walsh, Ex. 12). She reiterated she was "not positive" when she first viewed the photo to the prosecutors before trial. (Tr 177-179, 431-42), but only after viewing the defendant's Facebook page did she

---

[7] Later, at trial, Robert Jackson testified that after his mother pointed out a person from photographs that looked like one of the robbers, his mother and the Detective "went on, she had a iPad on her lap and they went into Facebook." (TR 597, 598). Jackson testified that because his mother "can't type – the Detective typed but my mother told the Detective what to type in" because his mother saw the name. " *Id.* By trial, after listening to his mother's testimony he testified that they viewed the photos first but then "they looked on the ipad and through the Facebook photos." (Tr 598).

become sure. (Tr 177). Unlike the other four police arranged identifications,[8] Desiree Scroggins never signed or marked a photograph or array and a subsequent interview with prosecutors a year later claimed to have been 70% sure, but later after viewing Facebook with her mother and the Detective "knew it was him." (Walsh, Ex. 14, (Notes of Interview, SCROGGINS 3503-16), Tr 179). Apparently, her "identification" was not credited or noticed in the criminal complaint filed in July 2014. (Walsh, Ex. 2 (Complaint ¶ 8).

At trial, an immunized Desiree Scroggins, (Tr 101), testified that she met with law enforcement at her mother Lorraine's apartment following the robbery in January. (Tr 138). There the Detective showed her photographs and she testified that she recognized one person from the robbery from the photos shown to her. (Tr 139, 169). By this time, Desiree calculated that she was "75% sure." (Tr 140). She also corroborated that her brother, Robert was home that day, (Tr 138, 169) and after she "picked [the detective] went into my mother's room and she [Lorraine Scroggins] picked out the same photo." (Tr 140, 169, 170) (emphasis supplied). Lorraine Scroggins also corroborated that her son, Robert Jackson, was there the day she made the identification. (Tr 567) Although Desiree testified she was not in the room at the time but went in a short time after and Deloren was on the opposite side of her mother's bed and her mother turned and said, that's the guy – "the same guy that I pointed out was the same guy," (Tr 141) and later asked her; "That's him, right?" (Tr 152). At trial, Desiree Scroggins identified the photo marked by her mother that same day, as the photo she identified as looking like a robber, (Tr 151 (GX 200)), but she was never asked to mark the photo contemporaneously or ever. (Tr 432). She indicated she entered the room and looked at an "electronic device" of photographs of

---

[8] Lorraine Scroggins was asked to view photographs of the defendant twice. Once in January 2014 with Detective Deloren while her daughter and son were present and then again, after the ATF agent entered the case and a six pack photo-array was displayed to her in April 2014, again containing Ralph Nolan's photograph. (Tr 432-433, 317)

the guy she identified because her mother somehow had the name. (Tr 153, 170 171). The detectives were in the room as mother and daughter browsed internet photos of the defendant at Lorraine Scroggins' bedside. (Tr 171, 174). Lorraine admitted to viewing defendant's photograph on the internet, but at trial first claimed she could not remember if she did that very same day. (Tr 567).

None of the internet photos except one – the Facebook photo of the defendant posing with the toy bb gun, apparently accessible to even "non-friends," (Tr 20), were preserved or moved into evidence.[9] (GX 501, Tr. 326-328, 386). Although Desiree Scroggins never marked any photo from any identification proceeding, (Tr 432) and unlike the others, apparently she was never asked to view a "six pack" of photos, she testified that after she viewed the defendant's "photo album in his profile" and saw his "Facebook account" then she said she became "positive" of her identification. (Tr 153, 154). Desiree Scroggins denied that the Detective told her and her mother to look for the other perpetrator on Nolan's Facebook page, but instead claimed he told them to stop looking because they "could get in trouble." (Tr 171-172). Detective Deloren's testimony directly contradicted this account, although he admitted asking them to look at the defendant's friends on Facebook to see if they recognized anyone else and in fact "encouraged" eyewitnesses to view the Facebook pages of the suspect. (Tr 513). That same day, Desiree Scroggins showed the defendant's Facebook page to Christopher Martinez and Sandra Martinez. (Tr 567-568; 172-174; Walsh, Ex. 15, (Letter from Gov't.) and Walsh, Ex. 14, Walsh, Ex. 19).

By the time of trial defense counsel was well aware of these suggestive identification proceedings and had been made aware that the detective who conducted the identification

---

[9] The Facebook photograph was moved into evidence without objection and with the stipulation that it is a "true and correct copy of a photograph posted on the Facebook page used by Ralph Nolan." (Tr 325 – 328, 386, (GX 501, Walsh, Ex. 3)

proceedings, Detective Deloren, had been criticized in the same courthouse months earlier for conducting a similar, impermissibly suggestive identification proceedings. See *U.S. v. Chambers*, 13 Cr 345 (LGS)[10] where he displayed single, electronic photographs of a defendant repeatedly to an eyewitness, shared the name of the suspect with the witness, (as he did here), who then subsequently "googled" the witness on the internet, to secure an identification. Moreover, defense counsel knew that Detective Deloren's testimony previously had also been found incredible by another SDNY Judge, Deborah Batts. See *United States v Cooper*, 05 Cr 1139 (DAB)(Walsh, Ex. 11 at pp. 3-4, citing exhibits E & F annexed thereto). Here, he had direct proof that the Detective showed the electronic Facebook page of Ralph Nolan to Lorraine Scroggins, before she or anyone identified the photograph. (Robert Jackson)[11]

---

[10] In *Chambers*, the Court suppressed the identification and struck all testimony concerning both the in-court and out of court identifications due to the unconstitutionally suggestive proceeding conducted by the very same detective as in this case, which like here, included sharing the name of the suspect with the witness, multiple single photo displays to the witness including only one of which was "opened on a computer screen" for the witness to view. (Walsh, Ex. 34) The *Chambers* Court found the Detective's testimony not credible and also denied the Government's post-trial motion to withdraw that very adverse credibility finding against the detective surrounding the identification proceeding. *See, U.S. v. Chambers*, 13 Cr 345 (LGS), (Walsh Ex. 11 at Ex. E, 3509-10) and *Chambers* Opinion and Order of July 9, 2015 (Dkt No. 236), (Walsh, Ex. 16, trial court holding reproduced in part at pp 23 - 25). That case is currently pending on direct appeal before the Second Circuit Court of Appeals. *United States v. Glisson and Chambers*, 16-163.

[11] Robert Jackson, Lorraine Scroggins' son was present when his mother was shown Ralph Nolan's photo by Detective Deloren. He described how:

> RJ: All right. [The Detective] He had, um, a lineup where everybody... So, I am sitting here with her [Lorraine Scroggins]. He showed her the pictures. She said, "oh, could look like this guy here" Right? so then he was like, "Wait. So Let me show you something else."
>
> Q: Did your mom seem sure that it was him at that point in time?
>
> RJ: She was, she was like looking at it like, "oh, it could be him...."
>
> Q. Maybe it could be him?

Nevertheless, when pressed by the Court for the basis for the motion, defense counsel failed to articulate adequate grounds to justify a pre-trial hearing, gave up mid-argument and withdrew the motion challenging the out-of-court identifications, the tainted in-court identifications and the request for a pre-trial hearing. (Tr 50). The Court never heard the full panoply of facts as to why the proceedings were impermissibly suggestive. Further, defense counsel failed to renew the motion as the tainted evidence unfolded throughout the trial compounding the error again and again in front of the jury.

C. Government Demands Alibi Notice

On March 18, 2015 the Government served a written demand for alibi notice in writing on defense counsel. (Walsh, Ex. 17). Defense counsel never provided notice and as a result was precluded at trial from offering crucial evidence. He had expected to establish that his client had been working with his father the morning of the robbery in preparation for a job in Connecticut and later that he in fact did work with his father the day after the robbery. (Tr 666).

| | | |
|---|---|---|
| RJ | | It could be him. |
| Q. | | Okay |
| RJ | | So they – he showed - he grabbed the ipad here and he was looking through some from friends or wherever the case may, wherever he had got them from and as soon as a- soon as that hit that a picture popped up she was like oh, jumped up in bed and said, "that's him." |
| Q: | | That's him. |
| RJ: | | That's him. So, he went back to the and he said, "This guy right here that we looking at on Facebook is this guy right here " on that – "on the lineup sheet." |
| Q: | | So the Detective pointed out that the guy on the Facebook is the guy in the photo array? |
| RJ | | Is this guy right here...... |

(Walsh, Ex. 10, Audiotape at 39:30 ).