Cir) *cert denied* 439 U.S. 871 (1978) 'may tend to reinforce an otherwise weak or tentative identification..." *United States v. Thai*, 29 F.3d 785 (2d Cir. 1994).

Not only did the detective taint the proceeding with his actions surrounding Facebook, the taint was compounded by repeated showing of the same photo to the witnesses again by Agent Winston. Both Lorraine Scroggins and Sandra Martinez were asked to view photos of the defendant twice. (Tr 311-312, 316-317,433-434) The repeated use of the same photograph in successive photo arrays has been criticized in the Second Circuit due to its suggestivity. *United States v. DiPalermo*, 606 F.2d 17, 21 (2d Cir. 1979) and the social science studying eyewitness accuracy strongly discourages it. (*See* Point B). The combination of the suggestivity of the Facebook proceeding, the Detective's encouragement of the witnesses to view electronic photos and the successive showing of the same photograph of the defendant, made it "all but inevitable that [the witnesses] would identify" Ralph Nolan in court. *See, Foster v. United States*, 394 U.S. 440, 443 (1996); *see also Kennaugh v. Miller*, 289 F.3d 46-48 (2d Cir. 2002).

Had defense counsel proffered Robert Jackson's statement and of course, not withdrawn the motion to suppress, the Court would have been apprised of the impermissible taint that occurred at least as to the two Scroggins' identifications. Even in the unlikely event that the identifications were not suppressed pre-trial, counsel still would have had the opportunity to bring all of this evidence to the jury so the decision to withdraw the motion is even more troubling. *See Morrison v. Kimmelman*, 752 F.2d 918, 922 (3d Cir. 1985) (suggesting that "proper norms of advocacy" required a "timely [motion] to suppress" where there was a valid basis for suppression.) *aff'd on other grounds* 477 U.S. 365 (1986). Regardless, these two identifications were not independently reliable under the totality of the circumstances to overcome "the corrupting effect of the suggestive identification proceeding itself." *Manson*, 432 U.S. 98.

A "witness who makes an out of court identification in unduly suggestive circumstances may perform an in-court identification only if the government demonstrates by clear and convincing evidence that the in court identification rests on an independent source." *United States v. Sulaiman Abu Ghayth*, 990 F.Supp.2d 427 (S.D.N.Y 2014) (quoting *Young v. Conway*, 698 F.3d 69 (2d Cir. 2012). The factors include 1) the witnesses' opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description; 4) the level of certainty demonstrated by the witness; and 5) the length of time between the crime and the identification. *See United States v. Kwong*, 69 F.3d 663, 66 (2d Cir. 1995); *Rock v. Conway*, 470 Fed. Appx. 15 (2d Cir. 2012) *citing Neil v. Biggers*, 409 U.S. 188 (1972)). None of these factors favor in-court identification testimony.

With the exception of Desiree Scroggins, whose purported selection of the defendant's photo was never documented, (T 432), none of the witnesses had a particularly good opportunity to view the robbers based on the descriptions of the robbers moving in and out and around the apartment; the hoodies, skullies and hats that they were wearing; the inordinate amount of stress they described experiencing at gun point. Of course, Lorraine Scroggins as a quadriplegic, was bed-ridden throughout the ordeal. She indicated that the robbers were coming in and out of her bedroom as they searched it, she was "very scared" and "frightened," and kept her head down because of the threats. (Tr 561, 576, 581, 579). Desiree Scroggins claimed to black out during at least a part of the robbery, (Tr 125-127), admitted that she was nervous during this "terrifying event" (Tr 160, 162).

None of the prior descriptions matched the appearance of White, "Irish Canadian" Ralph Nolan, 5 foot 7 inches and 165 pounds. (Walsh, Ex. 13, Tr 741). As Desiree Scroggins testified at trial she and the others were interviewed by the police and everyone described the robbers as "male Hispanics," (Tr 159, 161-162, 339, 349, 357, 414-416; 459). The wanted poster described

"2 Male Hispanics;" (Walsh, Ex. 23) as did the Sprint of the emergency 911 call the day of the robbery. (Walsh, Ex. 24). Desiree Scroggins, described the robbers as "American Puerto Ricans," (Walsh, Ex. 25), as did the home health attendant herself. (Tr 192, 201, 415). Asked on direct examination the health attendant, Beriguete, was asked if she could see the robbers' skin tone, she said, "yes" and described their skin tone as "not black" and "not white." *Id.*

Moreover, all four identifying witnesses, acknowledge that none of them gave the slightest hint that one of the robbers was at all familiar to them, much less that they recognized one from the old neighborhood. Other parts of the descriptions varied including but not limited to height, weight and whether they did or did not wear masks, hats or hoodies. (T 199, 200, 222, 349, 459-460) (Walsh, Ex. 20, 24, 25 ).

Finally, it was not until six weeks after the December 13, 2013 robbery that the first identifications were made, long after the event, on January 27 and 28, 2014. In fact, Christopher Martinez did not identify the person he called "white boy" until two months later in February 2014. (T 443-444) Of course, in addition to these factors, others that weigh into the totality of the circumstances include the chronic drug use by at least three of the four witnesses, particularly the chronic use of what is widely known to be a memory impairing drug - marijuana, as well as their motivation to curry favor with law enforcement which ultimately resulted in immunity for all four of them. The fact that the only witness who did not select Ralph Nolan's photograph from the array was the only witness who was unrelated to the others, was not exposed to his Facebook page, and did not testify with a grant of immunity speaks volumes about the lack of reliability in these procedures. In short, counsel's withdrawal of the motion and failure to suppress the only direct evidence linking Ralph Nolan to this crime was patently ineffective.

F. Petitioner Was Denied His Right to Effective Assistance of
Counsel When His Attorney Permitted the Introduction of Highly Prejudicial
Prior Crimes Evidence And Failed to Investigate and Mitigate Such Evidence

It is a fundamental tenet of criminal law that a person must not be convicted based on the jury's assumption that he is bad because he committed some unrelated crime in the past, or worse was merely alleged to have committed some crime in the past and was not even convicted of committing the crime. Nevertheless, in this gun-point home invasion robbery case, in which the sole issue was identification, defense counsel raised no objection when the Government introduced testimony about and the actual Facebook photograph of the his client posing with what appeared to be and what the Government explicitly argued was a handgun. (Tr 325-328; GX 501, 787) (Walsh, Ex. 3).[32] Similarly, defense counsel did not object or seek to limit the introduction of his client's criminal history repeatedly throughout the trial, including permitting the introduction of another "robbery" his client committed and, in fact, affirmatively brought before the jury testimony about his client's prior crimes. Introduction of this testimony, particularly regarding a conviction for "the same type of conduct for which he was on trial" is "classic, and powerful evidence of propensity." *United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009) (introduction of prior narcotics conviction in narcotics conspiracy case without prejudice analysis erroneous, albeit harmless given overwhelming additional evidence).[33]

---

[32] In fact, inexplicably defense counsel did not move to have reference to the "gun" photo redacted from the post-arrest video taped statement or seek a limiting instruction but instead, stipulated to the photo having come from his client's Facebook account. Of course, the Government exploited this potent evidence on summation. (T 787).

[33] Although the defendant had a criminal record, it was not particularly egregious or violent. He had just one, prior felony – the lowest level - an E felony for criminal mischief property damage to a police car. The rest of his convictions were for misdemeanor crimes for personal use marijuana possession, petit larceny, trespassing in the park and one misdemeanor attempted assault and a misdemeanor menacing conviction for a fight with his Dad, the details of which were disputed at trial. His other prior "robbery," discussed *infra*, was a sealed juvenile

Even had counsel sought to prevent the introduction of this evidence but somehow failed, his conduct fell below the reasonableness standard when he made no effort to mitigate the prejudicial impact of some of the acts with a evidence that the gun in the photo was, as his client stated, not a real one but a bb gun or that the prior "robbery" was a sealed juvenile offense that occurred in 2004, close to ten years prior when the defendant was only fifteen. (Walsh, Ex. 5) (Family Court Record).

This omission is particularly egregious given the 404(b) notice served by the Government on March 10, 2015 indicating that it might seek to introduce evidence that on or about "July 7, 2004, in the vicinity of Perry Avenue and East 205th Street in the Bronx, New York, the defendant and approximately three other individuals attempted to rob another individual." (Walsh, Ex. 8). Setting aside that this was a juvenile attempt adjudication, the remoteness in time alone should have set off alarm bells to preclude the nine year old "robbery." Instead, the trial was permeated with references to the defendant's past criminal behavior and the photo of him posing with what appeared to be a handgun went unchallenged and unrebutted, without a peep of protest by his lawyer.

What is worse, counsel neither sought a contemporaneous limiting instruction with respect to this highly prejudicial evidence when it was received nor in the final jury charge. And accordingly, no such instruction was given. The repeated and unchallenged introduction of defendant's crimes, arrests and prior bad acts "had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." *Strickland*, 466 U.S. at 695, 96. But for these errors, there is a reasonable probability the result of the proceeding would have been different." *Strickland*, 466 U.S. at 668. Due to counsel's errors, the jury was left with a

---

adjudication committed ten years prior to this case and at the age of fifteen and did not involve a weapon of any sort, but fisticuffs between teenage boys. (Walsh, Ex. 5).

false and prejudicial impression that the defendant was a recidivist robber, a gunman known to law enforcement with a long record. In short, because of these errors alone and in combination with manifest errors surrounding the identification, counsel's conduct fell "outside the wide range of professionally competent assistance," *Claudio*, 982 F.2d 798 (internal citations omitted). In light of the paucity of direct evidence connecting the defendant to the crime, in particular, the prejudice was enormous. *See, Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001) (*internal citations omitted*) (finding counsel's representation ineffective particularly in light of weak prosecution case).

1. The Failure to Preclude the Facebook Photo of Defendant with a "Hand Gun"

The Government moved *in limine* for the introduction of a photograph printed from defendant's Facebook page in which he appears to be posing with a black hand gun. (Walsh, Ex.3). The defendant had been confronted with the photo at the time of his arrest on the video-taped post-arrest statement in evidence and explained it was an old photograph and more importantly, that it was a bb gun, not a real gun owned by his cousin, Joey Nolan. (T 321-322, GX 402) Defense counsel did not object, in fact appearing to barter the introduction of this highly prejudicial evidence, in exchange for the admission of defendant's entire unredacted post-arrest statement. (Walsh, Ex. 4 pp 1-12, Ex. 4a,). He never sought to keep the statement about the gun or the photograph out of the case. Failing successful preclusion, he did not seek a limiting instruction nor attempt to mitigate it with evidence that corroborated the truth of his client's statement.[34] Of course the Government exploited this potent piece of evidence in

---

[34] In fact, counsel stipulated to the foundation for the Facebook photograph – not only corroborating this particular photograph but also that his client indeed had a Facebook account and therefore, implicitly bolstering the four eyewitness's accounts of having viewed it to identify the defendant. (Tr 327-328, GX 701)
782712 v1                      76

summation utilizing the photograph and ridiculing the post-arrest statement that it was a bb-gun. (Tr 787 ).

Introduction of the photograph was itself improper, but the failure to object or mitigate its damage was worse. The Government sought introduction of the photograph on alternative grounds, either that it was "intrinsic" evidence of the crime charged or proper under FRE 404(b). (Walsh, Ex. 7, ). Although defense counsel remarked in passing that it was not 404(b) evidence, he made no argument and as noted, failed to object at trial. (Walsh, Ex. 4 at 10-11, Tr 328). There was no evidence as to when the photograph was taken in relation to the December 2013 robbery or where. Obviously the government could not and did not suggest that this was in fact a gun used in the robbery, nor could there be given that the black bb-gun depicted in the photo did not at all resemble the eyewitness's description of the "silver and brown" one used in the robbery. (Tr 123 – 124, 160). The implication that the defendant possessed and was facile and familiar with firearms was unmistakable. In short, introduction of this inflammatory photo was hardly "necessary to complete the story of the crime on trial" as is required for the evidence to be admitted as *res gestae* or intrinsic evidence as the Government argued. *United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007); *see also, United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010) *but see United States v. Gibbs*, 797 F.3d 416 (6th Cir. 2015) (photographs and ammo from subsequent shooting improperly admitted at felon in possession trial, although photos of defendant holding gun that "*appears to be in all respects the same as the one described by the witnesses*" relevant and admissible) (emphasis supplied).

Nor was the evidence properly admitted under Federal Rule of Evidence ("FRE") 404(b). It is well settled that FRE 404(b) generally prohibits the introduction of extrinsic evidence that will adversely reflect on the defendants' character, unless probative of a material issue other than character. *Huddleston v. United States*, 485 U.S. 681 (1988). In short, the Government must

show that the evidence is introduced for a proper purpose, it must be relevant, and its probative value must substantially outweigh the prejudicial impact. *United States v. Gilan*, 967 F.2d 776 (2d Cir. 1992). The defense of misidentification eliminated any legitimate purposes for which the photograph could have been admitted. *United States v Paulino*, 445 F.3d 211 (2d Cir. 2006) (when defendant relies on defense of he "did not do the charged act at all" evidence of other acts is not admissible for proof of intent or knowledge) (internal citations omitted). Absent a similarity to the described weapon that had been used in the robbery, the mere picture of the accused holding a gun is proof of nothing – not simply because it is remote in time, but because given the prevalence of guns, it provides no inference whatsoever that makes it more likely that the accused was the perpetrator. Hence, its only probative value is the tenuous, but highly prejudicial inference that anyone who displayed a picture of themselves with a gun was more likely the robber in this case. And without evidence that it was in fact an operable gun it is ludicrous to suggest any probative value.[35] *See eg: United States v. Rutkoske*, 506 F.3d 170, 177 n.3 (2d Cir. 2007) (temporal difference between charged conduct and bad acts may impact whether the evidence is probative). Additionally, "[s]imply because the defense has put [certain]

---

[35] The out of circuit cases relied upon by the Government, unchallenged by the defense at the time, are distinguishable. In *United States v. Dale*, a gun possession case in which the defendant was seen tossing a gun from a car, a photograph taken within 7 months prior to the incident, found in the defendant's car at the time of the offense depicted him holding a similar gun as the one he was charged with possessing was admitted to establish opportunity and absence of mistake (ie: it was someone else's gun). *Dale*, 1998 U.S. App. LEXIS 9239 (7th Cir. 1998). The facts of this case do not even come close to those in *Dale*. There was no foundation as to when the photo in this case was taken or where it was taken, the bb gun depicted did not match the description given by the victim of the one used in this case and the only relevance to the charges here, are propensity. The Eleventh Circuit case relied on by the government for admission here, is equally distinguishable in as much as there the photograph depicted the defendant posing with exactly "the very weapons charged in the indictment," ("two tenth anniversary gold-plated Lorcin pistols, the same type found in the safe" at the defendant's home.) *United States v. Benford* 479 Fed. Appx. 186 (11th Cir. 2011). As noted the description of the "brown and silver" gun in this robbery, does not even match the bb gun in the photo. (T 123-124; 159-160) (Walsh, Ex. 3).

matters in issue does no open the door for the government and give it carte blanche to introduce any prior act of defendant that falls into the same crime category." *United States v. Meislin*, 108 F.Supp.3d 38 (N.D.N.Y. 2015) *quoting United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003); *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (evidence of prior convictions was "propensity evidence in sheep's clothing.").

Assuming, but without conceding that an undated photograph of the defendant holding what appeared to be a hand gun was relevant to the issue of whether he committed this armed home invasion, "mere relevance is not sufficient to guarantee admissibility of evidence of a defendant's other bad acts…" *United States v. Hsu*, 669 F.3d 112 (2d Cir. 2012). Once the first two prongs of *Huddleston* are completed,(the evidence was offered for a proper purpose and relevant), the court "must determine if its potential for unfair prejudice substantially outweighs its probative value." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (reversing conviction for introduction of highly prejudicial evidence of conduct 14 months after charged crime notwithstanding limiting instruction); *see also*, Fed. R. Evid. 403. Here, the Court did not make such a determination given defense counsel's failure to object.

"Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence" *Id*. Quoting *Massino*, 546 F.3d 123, 132 (2d Cir. 2008); *Old Chief v. United States*, 519 U.S. 172 (1997) (defining unfair prejudice as "an undue tendency to suggest decision on an improper basis.") Setting aside defense counsel's failure to alert the court to any objection about the evidence referencing this photo in the post-arrest interrogation; the introduction of the photo itself nor a request for a limiting instruction, admission of the photograph was substantially more prejudicial than it was probative. The jury need not rely on the descriptions of eyewitness accounts but simply glance at the Facebook page of the defendant holding what the Government

782712 v1

79

argued was a weapon to conjure the image of him as a gun wielding robber. (Tr 787). "[E]vidence creates a prejudicial effect warranting exclusion if it tends "to excite emotions against the defendant." *Curely*, 639 F.3d 57 (*quoting United States v. Figueroa*, 618 F.2d 934, 2d Cir. 1980).

### a. Defense Counsel Failed to Mitigate Facebook "Gun" Evidence

As the defendant said in his post-arrest statement, the Facebook photo of him depicted him holding his cousin's bb gun in his cousin's home. (GX 402, Walsh, Ex 3 & 6). Had defense counsel interviewed Joey Nolan, he could have at least mitigated this potent propensity evidence with a witness who corroborated his client's honest account, failing successful preclusion. (Walsh, Ex. 6 (Statement of Joey Nolan). Joey Nolan was prepared to testify that he took the photo of the defendant for his Facebook page; that it was his toy gun bb gun he himself had purchased on Amazon and that they had taken the photo at his home "playing around." (*Id.*) The first someone spoke to him about the issue from Ralph's legal team was in June 2016 – over a year after the trial. (*Id.*) Knowing the potential prejudice that would result from displaying picture of his client holding what appeared to be, but actually was not a gun, there was no excuse for the failure to investigate Ralph Nolan's claim that it was not a real gun in an effort to obtain independent corroboration from a witness whose identify was provided by Nolan and who was readily available. Had the defense team conducted minimal investigation and interviewed the witness, counsel would have been in position to present a compelling argument to the court to preclude its admission. And failing that, the witness was ready and able to testify at the trial to mitigate the prejudicial impact of the photo by corroborating the defendant's statement. These collective failures opened the door for the prosecutor to fully exploit the photo in his closing argument by denigrating the defendant claim as that of a self-serving liar. (T 787).

## 2. The Failure to Preclude Evidence of Remote Juvenile Attempted Robbery

Defense counsel failed throughout the trial to keep evidence of other arrests and convictions out of the case, including a sealed juvenile robbery conviction. The Second Circuit has explicitly warned against the "singular risk of serous prejudice " that flows from the introduction of prior convictions which " jeopardize the fairness of a trial." *United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009) (noting that even this circuit's inclusionary approach to 404(b) evidence is not an invitation "to offer carte blanche, any prior act of the defendant in the same category of crime." *quoting United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002). The *McCallum* court noted that "standing alone, prior convictions are capable of undermining the presumption of innocence and distracting the jury from the business of determining guilt or innocence based on proof of the charges in the indictment." *Id.* at 478 (emphasis supplied). It is because "such evidence easily lends itself to generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of innocence," that the Second Circuit has underscored what particular, conscientious care must be taken in considering the introduction of such evidence. *Id.* at 476 (internal citations omitted).[36] Such evidence perhaps more than any other invites speculation about the defendant's propensity to commit crimes ie: if he did it before he is more likely to do it again. Nevertheless, that is precisely what occurred here, and sadly, more than once.

Counsel's prejudicial ineptitude and lack of preparation was also evident with respect to his failure to address the "prior robbery" about which law enforcement inquired during his client's post-arrest statement. (GX 402). Counsel failed to present the mitigating facts of this

---

[36] It is a fundamental principle of our jurisprudence that evidence of an accused's prior criminal record is inadmissible when the accused chooses not to testify and does not place his character in issue." *United States v. Torres-Flores*, 827 F.2d 1031 (5th Cir. 1987) *citing Barnes v. United States*, 365 F.2d 509 (D.C. Cir 1966) (additional citations omitted).

sealed juvenile conviction that might have persuaded the Court to redact the reference. Had the court known the facts of the case, that it was hardly a gun point robbery, but a day time confrontation involving fisticuffs between neighborhood teenaged boys bullying for pocket change, and been apprised that it was juvenile incident from more than ten years ago when Ralph Nolan was only 15 years old, there is every reason to believe that the Court would have concluded that the prejudice of admitting that evidence far outweighed its probative value. (Walsh, Ex. 5). Failing that, counsel certainly should have requested that the jury be given a limiting instruction and/or presented the evidence that this was juvenile act that bore virtually no relevance to the identify of the robber in this case. Indeed, had it failed to preclude the reference to the prior robbery, counsel could have readily produced evidence that would have both corroborated the truth of his client's account on the video-taped statement but would also have demonstrated (either by stipulation or court record) that his client was just 15 at the time of the prior event, over ten years before the instant case.[37] And, counsel could have shown that the conviction was a juvenile conviction which did not involve any weapons and in fact resulted in probation. (Walsh, Ex. 5). Instead, the jury was left with the impression that the defendant had, in fact committed a prior robbery and it was given no evidence that would have precluded the inference that the prior robbery was proximate in time and similar in fact to the charged robbery.

In sum counsel failed to object in the first instance to damning evidence that his client committed a prior robbery, thereby depriving the defendant of the opportunity to keep this propensity evidence out of the case, and then he compounded that error by failing to present

---

[37] It is particularly problematic that law enforcement had access to and utilized a sealed juvenile adjudication from more than ten years prior to and during their interrogation of the defendant at the time of his arrest. In the absence of evidence of a lawful unsealing order, this fact alone may have persuaded the court to redact the reference to this incident in the statement.

readily available mitigating evidence to blunt it. This too, alone and in combination with the other errors, deprived defendant of his Sixth Amendment right and prejudiced him.

3. The Failure to Preclude Evidence of Prior Arrests and Convictions

Additional failures to prevent speculative and highly prejudicial evidence of prior criminal behavior occurred during the testimony of Detective Deloren. Testifying <u>without objection</u> to double layers of hearsay about Desiree Scroggins' friend's observations, Detective Deloren was permitted to testify on direct examination that he had included Ralph Nolan's photograph in a photo array based on a search "for anybody that had been arrested using that address..." (Tr 429). The obvious implication was that Ralph Nolan had been arrested prior to this case and thus had a mug shot included in the array. No limiting instruction was requested and none was given. Later, defense counsel compounded the error on cross-examination (Tr 504) implying that law enforcement indeed had multiple photos of the defendant and eliciting that they even had a more recent one from 2011 than the older one they actually used. (Tr 506-507).

Finally, the defense called the defendant's father, Ralph Nolan, who was precluded from testifying about relevant alibi evidence (see Point G *infra.*) but instead opened the door to evidence that the father had called the police on his own son, the defendant, for a violent assault with a chair and a bed frame. (Tr 751, 752). Not once did defense counsel seek a limiting instruction to which he was entitled. Fed. R. Evidence 104. Nor did he request one in the final pre-charge conference.

With respect to all of this prior crime evidence, the defense counsel's failure to object or make timely in limine motions, deprived the trial court of an opportunity to "carefully conduct" a probative versus prejudice balancing test required under *Huddleston*, its progeny and Federal Rule of Evidence 403. Balancing the nature of the defense and the lack of evidence besides the

782712 v1                           83

identification to connect the defendant to the crime against the prejudicial taint of prior criminal behavior, which was in no way probative of whether this defendant was the perpetrator, the equities clearly tip the balance in favor of exclusion. *McCallum*, 584 F.3d 471, 476. Instead, the jury was left with the indelible impression that the defendant had a gun, had committed a prior robbery, had assaulted his own father and had been arrested for other crimes at least as recently as 2011 – just two years before this robbery. Even had counsel requested a limiting instruction, which he did not and to which he was entitled, it is unlikely it could have cured such repeated and compounded propensity evidence in this case. *See generally, McCallum*, 584 F.3d 478 (if prior convictions admitted appropriate limiting instructions are required). These errors, alone and in combination raise a reasonable likelihood that had they not occurred, there is a reasonable probability that the results of the trial would have been different.

G. Counsel's Failure to File Alibi Notice Deprived Defendant of Effective Assistance

On March 18, 2015 the Government demanded in writing notice if the defendant intended to offer a defense of alibi. (Walsh, Ex. 17). Defense counsel did not provide alibi notice apparently due to a misapprehension of the law. Federal Rule of Criminal Procedure 12.1(a) requires the defense provide written notice of alibi "because an alibi defense is at once compelling if accepted and easy to concoct, so the prosecution is justified in wanting an opportunity to investigate it in advance of trial." *United States v. Ford*, 683 F.3d 761 (7th Cir. 2012) *citing Williams v. Florida*, 399 U.S. 78, 81 (1970); *United States v. Pearson*, 159 F.3d 480 (10th Cir. 1998).

In the middle of trial, the Government requested an offer of proof as to the defendant's father's testimony and counsel proffered he would testify that the defendant worked with his father the morning of the robbery to prepare for the job they had on the next day. (Tr 666). Although defense counsel argued that this was not alibi because the father would not be able to
782712 v1    84

account for his son's precise whereabouts the afternoon of December 16 when the robbery occurred, the Court found that such testimony, if not alibi, was not relevant. (Tr 667 – 684). The Government vigorously objected to what they characterized as "back door alibi," and the Court sustained the objection. *Id.*

As Judge Posner's decision in *Ford* underscores, even if it is not physical alibi or physical impossibility, evidence that suggests that it would by "psychologically impossible" or is psychologically inconsistent for the defendant to have committed the crime given his state of mind or inconsistent demeanor at or around the event is alibi evidence, "albeit alibi evidence of an unusual sort." *Id.* In *Ford*, a personal trainer wished to call a client to testify to his whereabouts two hours after the robbery, but more specifically his demeanor as "calm, friendly and professional" – presumably inconsistent with one who had just committed robbery 28 miles away and two hours earlier. *Id.* Regardless, of the strength of the evidence, the Seventh Circuit held that it was alibi evidence requiring notice under Fed. R. Crim. P. 12. *Id.*

Here, defense counsel called the witness despite the ruling, but the Government's objections were sustained when he put questions to the witness regarding the defendant's work the morning of and the day after the robbery. (Tr 738-739). Accordingly, defendant was not permitted to present a "psychological alibi;" to wit that a young man working with his Dad for a legitimate wage, presumably behaving normally and conducting routine operations both the morning of and day after the robbery would not commit an armed robbery a few miles away that very afternoon.

This psychological alibi evidence, the "obverse of evidence that the robber had been "nervous" and jumpy" an hour after the robbery," would have dovetailed perfectly with the misidentification defense counsel futility tried to put forth. *Ford*, 683 F.3d 761. Indeed, it is precisely because of the potency of the evidence that alibi notice is required, and counsel's

failure to know the governing law regarding alibi notice deprived his client of invaluable evidence.

Ironically, by calling the father to testify, despite the court's preclusion order as to the critical alibi evidence, defense counsel geometrically compounded the prejudice to his client by opening the door to the other crime evidence that was discussed in the preceding section. As counsel makes clear in his affidavit, he "did not provide alibi notice for the defendant's father's testimony because [he] did not believe the testimony was alibi." (Walsh, Ex. 29 at ¶¶ 9 & 10 ). It was not a strategic or tactical decision to fail to file notice, (*Id.*), but a mistake. Counsel's failure to recognize this proffered testimony as alibi, and his failure to file notice was unreasonable and the impact prejudicial. *Thomas v. Varner* 428 F.3d 491, 501 (3d Cir. 2005)("Courts have routinely declared assistance ineffective when 'the record reveals that counsel failed to make a crucial objection or to present a strong defense solely because counsel was unfamiliar with clearly settled legal principles.'"); *see also Greiner v. Wells*, 417 F. 3d 305, 325 (2d Cir. 2005).

II. THE CUMULATIVE EFFECT OF MULTIPLE ERRORS DEPRIVED DEFENDANT OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

Each of the errors committed by counsel individually demonstrates that his "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The failure to consult and call an expert in eyewitness identification; the failure to move to suppress the suggestive identifications; the failure to prevent the introduction of highly prejudicial prior crimes evidence, including a sealed juvenile adjudication and a photograph of the defendant holding a pistol and the failure to properly notice alibi compounded by poor cross-examination, insufficient investigation and limiting instructions each standing alone, deprived defendant of his Sixth Amendment Right to the effective assistance of counsel. U.S. CONST. AMEND VI. *McMann v. Richardson*, 397 U.S. 759 (1970). As counsel admitted by sworn

782712 v1

86

affidavit, none of trial counsel's errors and oversights were strategic or could reasonably be considered part of a reasonable trial strategy. (Walsh, Ex. 29).[38] For certain, the cumulative weight of this combination of errors in the aggregate deprived defendant of this fundamental right. *See, Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001) (*citing Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001) and holding that "cumulative weight" of "three serious flaws" in counsels performance fell outside wide range of adequate assistance, and prejudiced defendant particularly in light of weakness in prosecution's proof).

This Court need not find "one or another or less than all of the errors" briefed above would suffice to grant the *writ,* because *Strickland* directs a review of the "totality of the evidence before the judge or jury" and therefore, the Court must consider the errors in the aggregate. *Lindstadt v. Keane*, 239 F.3d 191 (quoting *Strickland* and collecting cases requiring review of cumulative effect of counsel's performance); *see also Eze, supra,* 321 F.3d 110 (assessing "aggregate effect" of counsel's errors to determine that "cumulative weight" rose to level of constitutionally deficient performance).

The only direct evidence that connected Ralph Nolan to this crime was the highly suspect identifications of four witnesses, each of whom testified under a grant of immunity, had every reason to curry favor with the police, who withheld information from the police and whose identifications were conducted under suggestive procedures by a detective whose credibility in conducting another police arranged identification was rejected by a sister court. The only victim who testified without immunity and who was not exposed to suggestive identification proceedings or contamination by Facebook or communication with other witnesses, did not

---

[38] Should their be any question as to whether any of the myriad and multiple errors were part of trial strategy or tactically considered, than this Court should hold an evidentiary hearing. *Eze v. Senkowski*, 321 F.3d 110 (2003).

identify Ralph Nolan as one of the robbers in the photo array she viewed. No DNA, no fingerprints no confession or cooperating witness connected the Defendant to this crime. The Government compounded much of defense counsel's ineffectiveness in summation when, in the absence of any defense expert to combat it, it exploited common misconceptions about eyewitness identifications, played the post-arrest statement referencing prior crimes on the videotape, and indeed, used the prejudicial Facebook photograph of defendant holding the bb-gun. (Tr 787).

Had defendant been able to challenge the identifications pre-trial, to present an expert to demonstrate the unreliability of the identifications, shared his alibi with the jury and not had his character assailed through photographs and false insinuation of a long and violent criminal history, there is more than a reasonable probability that the result of this trial would have been different. *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir. 1992) *cert denied* 508 U.S. 912 (193)(quoting *Strickland,* 466 U.S. 668).

## CONCLUSION

For all the reasons stated herein and in the accompanying Petition, the requested relief should be granted: this Court issue a writ of habeas corpus directing that the government retry Petitioner within 90 days or to release him from custody. In the alternative, the Court should order an evidentiary hearing.

Dated: New York, New York
October 6, 2016

Respectfully submitted,

By: _____
Susan J. Walsh, Esq.
Vladeck, Raskin & Clark, PC.
565 Fifth Avenue, 9th Floor
New York, New York 10036
Attorney for Petitioner
Ralph Nolan